Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>*Recurrido*<br><br>v.<br><br>CLARIBEL TORRES OLIVERO, CARLOS ALFONZO CHARDÓN Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>*Peticionarios* | TA2025AP00184[1] | Apelación **acogida como *Certiorari*** procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.: UT2022CV00006<br><br>Sobre: Cobro De Dinero |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparece ante nos, Claribel Torres Olivero, Carlos L. Alfonzo Chardón y la Sociedad Legal de Gananciales (parte peticionaria), y nos solicitan la revisión de la *Resolución*[2] dictada y notificada el 21 de abril de 2025, por el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI o foro recurrido); en la cual se declaró *No Ha Lugar* la solicitud de la parte peticionaria para que se le devolviera la cantidad de dieciséis mil setecientos doce dólares con noventa y dos centavos ($16,712.92) del total de diecinueve mil seiscientos sesenta y dos dólares con noventa y un centavos ($19,662.91) que fueron embargados de la cuenta número 3103625377 en el First Bank. Oportunamente, el 6 de mayo de 2025, la parte peticionaria presentó

---

[1] Acogemos el escrito de Apelación como un recurso de *Certiorari* por ser el mecanismo adecuado para la revisión del dictamen recurrido. Por motivos de economía procesal, conservamos la designación alfanumérica asignada por la Secretaría de este Tribunal.
[2] Entrada #61 de SUMAC.

*Moción de Reconsideración*[3] y, el 30 de junio de 2025, el foro recurrido la declaró *No Ha Lugar* mediante *Resolución*[4].

Por los fundamentos que pasamos a exponer, **expedimos** el auto de *certiorari* solicitado, **revocamos** la *Resolución* recurrida y devolvemos el caso al TPI para la celebración de una vista.

**I.**

El 13 de enero de 2022, el Banco Popular de Puerto Rico (BPPR o recurrido) instó una *Demanda*[5] contra la parte peticionaria, en la cual alegó que estos adeudaban la cantidad de treinta y tres mil ochocientos cincuenta y un dólares con setenta y tres centavos ($33,851.73) más intereses, "escrow", cargos por mora y cualquier otro cargo aplicable. Además, solicitó la cantidad de cinco mil dólares ($5,000.00) por costas, gastos y honorarios de abogados.

El 17 de agosto de 2022, y notificada el 18 de agosto de 2022, el TPI dictó *Sentencia*[6], en la cual declaró *Ha Lugar* la *Demanda* y condenó a la parte peticionaria al pago de la suma reclamada ascendente a treinta y tres mil ochocientos cincuenta y un dólares con setenta y tres centavos ($33,851.73).

Como parte del trámite post sentencia, el 6 de febrero de 2024, el TPI expidió *Mandamiento de Ejecución de Sentencia.* Conforme a dicha orden, el BPPR embargó una cuenta de los peticionarios en First Bank por la cantidad de diecinueve mil seiscientos sesenta y dos dólares con noventa y un centavos ($19,662.91). El 7 de junio de 2024, la parte peticionaria alegó ante el foro recurrido, que el embargo realizado por el BPPR fue ilegal, debido a que los depósitos de la cuenta eran por concepto de pensión de seguro social, y la Ley 42 U.S.C. 407 (A) prohíbe el embargo de dichos fondos. Oportunamente, el 5 de julio de 2024, el recurrido se opuso.

---

[3] Entrada #66 de SUMAC.
[4] Entrada #76 de SUMAC.
[5] Entrada #1 de SUMAC.
[6] Entrada #17 de SUMAC.

En lo pertinente a la controversia ante nuestra consideración, el 4 de noviembre de 2024, el TPI emitió *Resolución y Orden*[7] y resolvió que las pensiones de seguro social no son embargables. Por ello, ordenó al BPPR a que consignara en el Tribunal la cantidad de dieciséis mil setecientos doce dólares con noventa y dos centavos ($16,712.92); además, ordenó la celebración de una vista evidenciaria, debido a que de las mociones sometidas, no podía identificarse qué depósitos eran por concepto de seguro social.

El 23 de enero de 2025, el BPPR presentó *Moción Solicitando Citación*[8] de la Sra. Noraida Castro González (señora Castro González) de First Bank, quien fue la Supervisora que trabajó con el expediente de la parte peticionaria con relación al embargo realizado en la cuenta de éstos el día 21 de marzo de 2024, en la cual se le embargó la suma de diecinueve mil seiscientos veintidós dólares con noventa y dos centavos ($19, 622.92). Ese mismo día, el TPI emitió la citación[9] de la señora Castro González. Además, coetáneamente, la parte peticionaria presentó *Urgente Moción en Solicitud de Orden*[10], en la cual requirió que el BPPR informara el contenido del testimonio que aportaría la señora Castro González. El 23 de enero de 2025, el foro recurrido emitió *Orden*[11] y dispuso que el BPPR tenía que proveer un breve resumen, en o antes del 29 de enero de 2025, del testimonio de la señora Castro González, así también, ordenó que ambas partes debían informar los nombres de todos los testigos que habrían de presentar, con un breve resumen de su testimonio. Al día siguiente, la parte peticionaria presentó *Moción en Cumplimiento de Orden*[12], anunció los testigos y brindó un breve resumen de los testimonios. A su vez, solicitó que el BPPR informara

---

[7] Entrada #39 de SUMAC.
[8] Entrada #45 de SUMAC.
[9] Entradas #46 y #47 de SUMAC.
[10] Entrada #48 de SUMAC.
[11] Entrada #49 de SUMAC.
[12] Entrada #50 de SUMAC.

el contenido del testimonio que aportaría la señora Castro González, incluyendo pertinencia y un resumen.

El viernes 31 de enero de 2025, **a las 4:31 pm**, el TPI notificó una *Resolución Interlocutoria*[13] y, dispuso que el BPPR no podía presentar prueba testifical o documental en la vista señalada para el lunes 3 de febrero de 2025, esto por haber incumplido con la *Orden* del 23 de enero de 2025.

Así las cosas, el 3 de febrero de 2025, se celebró la vista evidenciaria y, el 6 de febrero de 2025, el TPI notificó mediante *Minuta*[14] lo acontecido durante la argumentación de las partes. De esta surge que, [e]*l propósito de la vista es que la parte demandada ofrezca prueba sobre la naturaleza de los depósitos que hay en el banco objeto del embargo.* Comenzado el testimonio de la parte peticionaria, se trabaron objeciones sobre la admisibilidad de los documentos que trataban de presentarse a través del testimonio del señor Carlos L. Alfonzo Chardón.

El 21 de abril de 2025, el foro recurrido emitió *Resolución*[15] y declaró *No Ha Lugar* la solicitud de la parte peticionaria para que se le devolviera la cantidad de dieciséis mil setecientos doce dólares con noventa y dos centavos ($16,712.92) por no haber probado que ese dinero correspondía a depósitos por concepto de pensión de seguro social. Razonó el TPI que, los estados de cuenta constituían prueba de referencia no admisible, y que la parte peticionaria no autenticó los mismos conforme las *Reglas de Evidencia,* específicamente, las Reglas 805(f) y 902 (k)[16].

El 6 de mayo de 2025, la parte peticionaria sometió una *Moción de Reconsideración*[17] en la cual alegó que: La exclusión de esta testigo por la parte recurrida fue de forma deliberada con la

---

[13] Entrada #51 de SUMAC.
[14] Entrada #52 de SUMAC.
[15] Entrada #61 de SUMAC.
[16] 32 LPRA Ap. VI, R. 805, 902 (k).
[17] Entrada #66 de SUMAC.

única intención que la testigo no fuera utilizada por los peticionarios y que no se pudiera utilizar para autenticar los estados bancarios sometidos por la parte peticionaria. Esta deliberada exclusión acarrea una penalidad bajo las *Reglas de Evidencia*, en específico, la Regla 301 de Presunción[18]. La Regla 304 (5)[19] establece que: toda evidencia voluntariamente suprimida resultará adversa si se ofreciere. Además, solicitó que se admitieran los estados bancarios.

Por otro lado, el 17 de junio de 2025, el BPPR presentó una *Réplica a Moción de Reconsideración*[20]. En esta, adujo que la parte peticionaria, *en la vista evidenciaria no pudo probar y demostrar que la suma de dinero embargada de $16,712.92 provenía del pago de seguro social; que tenía que seguir las disposiciones de las Reglas 805 (f) y 902 (k) de las de Procedimiento de Evidencia de Puerto Rico del año 2009 para poder presentar en evidencia la prueba documental; y si su intención era utilizar a la Sra. Castro como su testigo para autenticar los estados de cuenta, hecho que no ocurrió y que era imposible utilizarla por los hechos antes narrados, tenía que haberla añadido como parte de su prueba testifical y para esto tuvo 6 días desde el 24 al 29 de enero de 2025 y no lo hizo*[21].

El 30 de junio de 2025, el TPI emitió y notificó una *Resolución*[22] en la cual declaró *No Ha Lugar* la reconsideración presentada por la parte peticionaria.

Insatisfecha aun, la parte peticionaria compareció ante este foro y planteó los siguientes señalamientos de error:

> Cometió error en derecho y abusó de su discreción el Honorable Tribunal de Primera Instancia al ordenar en la vista que el Sr. Carlos Alfonzo Chardón no podía autenticar sus estados bancarios de su cuenta número 3103625377 de First Bank donde claramente se identifica los depósitos por concepto de seguro social.

---

[18] 32 LPRA Ap. VI, R. 301.
[19] 32 LPRA Ap. VI, R. 304 (5).
[20] Entrada #74 de SUMAC.
[21] *Íd.*
[22] Entrada #76 de SUMAC.

> Cometió error en derecho y abusó de su discreción el Honorable Tribunal de Primera Instancia al no reconsiderar su Sentencia y resolver que la deliberada exclusión de la testigo anunciada por la apelada, Noraida Castro González, acarreaba la aplicación de la presunción de la Regla 304 (5) de que toda prueba voluntariamente suprimida resultaría adversa si se ofreciera y así admitir los estados bancarios en evidencia.

Mediante *Resolución*[23] emitida el 5 de septiembre de 2025, concedimos al recurrido un término para expresarse en torno al recurso presentado. En cumplimiento, el BPPR compareció mediante escrito intitulado *Alegato en Oposición*.

Así pues, con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**-A-**

El auto de *Certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[24] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[25]. Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[26]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[27].

---

[23] Notificada en igual fecha.
[24] 32 LPRA Ap. V, R. 52.1.
[25] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. __, 215 DPR __ (2025).
[26] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[27] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[28]. No obstante, la Regla 52.1, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[29].
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[30], para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *Certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

---

[28] *García v. Padró*, 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).
[29] 32 LPRA Ap. V, R. 52.1.
[30] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. __, 215 DPR __ (2025).

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *Certiorari*[31]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[32].

**-B-**

Reconocemos que los Tribunales de Primera Instancia tienen una gran discreción en el manejo de los procedimientos celebrados en sus salas. En su misión de hacer justicia, la discreción es el más poderoso instrumento reservado a los jueces[33]. En el ámbito del desempeño judicial, la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del derecho; ciertamente, esto constituiría un abuso de discreción. La discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[34]. Tal conclusión justiciera deberá estar avalada por el convencimiento del juzgador de que la decisión tomada se sostiene en el estado de derecho aplicable a la cuestión planteada. Ese ejercicio constituye "la razonabilidad" de la sana discreción judicial[35].

En el contexto de esa doctrina, debemos tener presente el alcance de nuestro rol como foro apelativo al intervenir precisamente con la discreción judicial. Es norma reiterada que este foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de

---

[31] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[32] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).
[33] *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981).
[34] *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997).
[35] *Negrón v. Srio. De Justicia*, 154 DPR 79, 91 (2001).

Instancia, salvo en caso de "un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial"[36].

### III.

En el caso de epígrafe, en apretada síntesis, la parte peticionaria arguyó que el foro recurrido erró en derecho y abusó de su discreción al ordenar en la vista que el Sr. Carlos Alfonzo Chardón no podía autenticar los estados bancarios de su cuenta número 3103625377 de First Bank y al no reconsiderar su *Sentencia* y resolver que la deliberada exclusión de la testigo anunciada por el recurrido, Sra. Noraida Castro González, acarreaba la aplicación de la presunción de la Regla 304 (5) de que toda prueba voluntariamente suprimida resultaría adversa si se ofreciera y así admitir los estados bancarios en evidencia. Por estar íntimamente relacionados los señalamientos de error, se discutirán en conjunto. La parte peticionaria sostiene que, la exclusión del testimonio de la señora Castro González fue errada en derecho y tuvo la consecuencia de no permitir a la testigo que podía autenticar los estados bancarios, como lo había solicitado el BPPR en la *Moción Solicitando Citación*[37], donde expuso que:

*[...]*

*2. Que la Sra. Noraida Castro González de Firstbank Supervisora trabajó con el expediente de la parte demandada con relación al embargo realizado en la cuenta de éstos el día 21 de marzo de 2024 en la cual se le embargó la suma de $19, 622.92.*

*3. Que entendemos que el número de la cuenta de Firstbank de la cual se embargó la suma de dinero es la número 3103625377, según estados de cuenta que nos fuera remitidos por la parte demandada.*

---

[36] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[37] Entrada #45 de SUMAC.

> *4. Que solicitamos de este Honorable Tribunal emita citación a la Sra. Noraida Castro González, a su correo electrónico noraida.castro@firstbankpr.com; ya que la misma es testigo de la parte demandante y se le ordene a proveer electrónicamente en o antes del 31 de enero de 2025 copia de los estados de cuenta del mes de enero 2023 a abril 2024 para poder utilizar los mismos en la vista evidenciaria*[38].
>
> *[…]*

Así pues, entiende la parte peticionaria que, el BPPR excluyó deliberadamente a la señora Castro González, quien con su testimonio hubiera autenticado los estados bancarios sometidos por la parte peticionaria. En la alternativa, se argumentó que los estados bancarios sometidos no son prueba de referencia, debido a que son documentos originales que la parte peticionaria pudo haber autenticado, ya que él los recibe mensualmente, y así identificar las cantidades que se depositaban por concepto de seguro social. Por otro lado, en su *Alegato en Oposición,* el BPPR alegó que esta Curia no debe intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto. Fundamenta su oposición con un análisis de las Reglas de Evidencia[39].

Es norma reconocida que los foros apelativos no debemos intervenir con las determinaciones realizadas por los tribunales inferiores cuando estas se enmarquen en su discreción. Sólo por excepción podemos intervenir con estas. Esta excepción surge cuando se demuestra que el TPI actuó con prejuicio, parcialidad, que se equivocó en la aplicación de cualquier norma procesal o que incurrió en craso abuso de discreción.

---

[38] *Íd.*
[39] 32 LPRA Ap. VI, R. 101, *et. seq.*

Evaluada la *Resolución*[40] impugnada, colegimos que es necesaria la intervención de este tribunal para evitar un perjuicio sustancial. En ese sentido, explica el Tribunal Supremo que la discreción judicial es *una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera*[41]. El abuso de discreción judicial, a su vez, incluye, entre otras cosas, el no tomar en cuenta e ignorar, sin fundamento para ello, un hecho material importante que no puede ser pasado por alto o concederle gran peso y valor a un hecho irrelevante e impertinente y basar la decisión enteramente en éste. Comprende, además, aquellas ocasiones cuando, no obstante tomar en cuenta los hechos importantes y descartar los irrelevantes, el juez sopesa y calibra los mismos livianamente[42].

En el caso de autos, la determinación del TPI de excluir la prueba testifical anunciada por el BPPR a poco tiempo de comenzar la vista del 3 de febrero de 2025 y sin haberlo solicitado alguna de las partes, es problemáticamente liviana y falla en considerar el propósito que el propio foro recurrido delineó, a saber: *Por tanto, este Tribunal entiende necesaria la celebración de una vista evidenciaria para determinar la cantidad de dinero embargada que pertenece a depósitos del seguro social*[43].

En vista de lo anterior, y luego de un ponderado análisis y examen del expediente ante nuestra consideración, **se ordena que el TPI celebre una vista y se presente el testimonio de la Sra. Noraida Castro González para dilucidar si en los estados bancarios del mes de enero de 2023 a abril de 2024 de la cuenta número 3103625377 de First Bank, reflejan que se depositaron pensiones del seguro social.**

---

[40] Entradas #51, #52 y #61 de SUMAC.
[41] *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964).
[42] *Pueblo v. Ortega Santiago*, 125 DPR 203, 211-212 (1990).
[43] Entrada #39 de SUMAC.

La realización de esa vista evidenciaria es necesaria para *lograr impartir justicia al resolver los reclamos de las partes, el tribunal deberá hacer un balance equitativo entre los intereses en conflicto, ejerciendo especial cuidado al interpretar las reglas procesales para que éstas garanticen una solución justa, rápida y económica de la controversia*[44].

### IV.

Por los fundamentos antes expuestos, se ***expide*** el auto de *certiorari* solicitado, se ***revoca*** la *Resolución* recurrida y se devuelve el caso al TPI para la continuación de los procedimientos, conforme a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[44] *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 816 (1986).